**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN A. HEILIMANN,** | : | **No. 3:14cv1271** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **STATE TROOPER THOMAS O'BRIEN,** | : | |
| **Individually and as a State Trooper** | : | |
| **for the Commonwealth of** | : | |
| **Pennsylvania; STATE TROOPER** | : | |
| **PETER P. NEMSHICK, Individually** | : | |
| **and as a State Trooper for the** | : | |
| **Commonwealth of Pennsylvania;** | : | |
| **CORY MOODY; AGENT** | : | |
| **CHRISTOPHER CARDONI,** | : | |
| **Individually and as an employee of** | : | |
| **the Pennsylvania Gaming Control** | : | |
| **Board; MOUNT AIRY, NO. 1, LLC** | : | |
| **d/b/a MT. AIRY CASINO; JOHN DOE** | : | |
| **CASINO DEFENDANTS #1-25,** | : | |
| **Individually and as employees of Mt.** | : | |
| **Airy Casino; and JANE DOE CASINO** | : | |
| **DEFENDANTS #1-25, Individually and** | : | |
| **as employees of Mt. Airy Casino,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Ryan A. Heilimann (hereinafter "plaintiff") avers that two

Pennsylvania state troopers, a Pennsylvania Gaming Control Board

(hereinafter "GCB") agent, and casino security violated Pennsylvania state

law and his civil rights under 42 U.S.C. § 1983 (hereinafter "section 1983")

for events related to his detainment and arrest inside Mount Airy Casino.

Before the court for disposition is Defendants Mount Airy Casino and casino security officer Cory Moody's (collectively "the casino defendants") motion for summary judgment.  (Doc. 42).  For the reasons that follow, we will grant in part and deny in part the motion.

**Background**

On August 25, 2012, plaintiff visited Gypsies nightclub inside Mount Airy Casino in Mount Pocono, Pennsylvania.  (Doc. 53-1, Pl.'s Additional Statement of Material Facts (hereinafter "Pl.'s SOF") ¶ 1).[1]  While dancing with a woman, plaintiff was escorted off the dance floor by Pennsylvania state troopers and casino employees.  (Pl.'s SOF ¶¶ 2-4).  At some point, a verbal exchange ensued, after which troopers arrested plaintiff and escorted him to the Pennsylvania State Police office located inside the casino.  (Pl.'s SOF ¶ 5).

The parties dispute what happened next.  Plaintiff testified that Defendant State Trooper Thomas O'Brien pushed him face down into the floor and intentionally twisted his ankle until it broke.  (Doc. 53-2, Dep. of Pl. Ryan A. Heilimann (hereinafter "Pl. Dep.") at 24-26).  Defendant Cory Moody, a casino security officer, however, testified that plaintiff tried to kick State Trooper O'Brien, but O'Brien caught plaintiff's leg and pushed him

---

[1]  We cite to plaintiff's additional SOF for statements that are generally unrefuted in the record.

down toward the floor.  (Doc. 42-2, Ex. E, Dep. of Def. Cory Moody (hereinafter "Moody Dep.") at 32-34).

As a result of the night's events, the Commonwealth charged plaintiff with aggravated assault under 18 PA. CONS. STAT. ANN. § 2702(a)(3), resisting arrest under 18 PA. CONS. STAT. ANN. § 5104, disorderly conduct under 18 PA. CONS. STAT. ANN. § 5503(a)(1), harassment under 18 PA. CONS. STAT. ANN. § 2709(a)(1), and public drunkenness under 18 PA. CONS. STAT. ANN. § 5505.  (Pl.'s SOF ¶ 14).  A jury found plaintiff not guilty of aggravated assault and disorderly conduct, and a Monroe County Court of Common Pleas judge dismissed plaintiff's resisting arrest charge on a motion for judgment of acquittal.  (Pl.'s SOF ¶ 17).  The judge, however, found plaintiff guilty of harassment and public drunkenness.  (Id.)

On July 1, 2014, plaintiff filed a thirteen-count complaint against Defendant State Troopers O'Brien and Peter P. Nemshick and Gaming Control Board Agent Christopher Cardoni (collectively "the Commonwealth defendants") as well as the casino defendants.  (Doc. 1, Compl.).  Counts I, III, V, VII, and XI allege civil rights violations under section 1983 against all defendants, excluding Mount Airy Casino.[2]  Counts II, IV, VI, VIII-X, XII also

---

[2]  The Commonwealth defendants have moved for summary judgment on plaintiff's section 1983 malicious prosecution claim, which is addressed in a separate memorandum.

assert respective Pennsylvania state law assault, battery, false imprisonment, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution claims against Defendant Moody.  Count XIII asserts a vicarious liability claim against Defendant Mount Airy Casino.

On March 4, 2016, the casino defendants moved for summary judgment on all claims.  (Doc. 42).  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to section 1983 for a violation of plaintiff's constitutional rights, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u>

Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P.

56(c)). "[T]his standard provides that the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the

motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949

(3d Cir. 1990). The burden is on the moving party to demonstrate that the

evidence is such that a reasonable jury could not return a verdict for the

nonmoving party. Anderson, 477 U.S. at 248. A fact is material when it

might affect the outcome of the suit under the governing law. Id. Where

the nonmoving party will bear the burden of proof at trial, the party moving

for summary judgment may meet its burden by establishing that the

evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial. Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its

burden, the burden shifts to the nonmoving party, who must go beyond its

pleadings, and designate specific facts by the use of affidavits, depositions,

admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The casino defendants move for summary judgment on all thirteen of plaintiff's claims, as well as plaintiff's punitive damages claim.  We address each in turn, beginning with plaintiff's federal claims.

**I.  Section 1983 Claims**

The casino defendants first move for summary judgment on plaintiff's section 1983 claims, arguing that they are not state actors, and therefore, section 1983 does not apply.  Section 1983 does not, by its own terms, create substantive rights; rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states, in pertinent part,

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two criteria must be met.  First, the conduct complained of must have been

committed by a person acting under color of state law.  Kaucher v. Cty. of Bucks, 455 F.3d 418 (3d Cir. 2006) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)).  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law.  Id. (citing Am. Mfrs., 526 U.S. at 49-50).

Generally, private actors do not act under color of state law, and thus are not liable under section 1983.  Indeed, a private entity is only liable under section 1983 if it "may fairly be said to be a state actor."  Lugar v. Edmondson Oil Co. Inc., 457 U.S. 922, 937 (1982).  To that end, the United States Supreme Court has articulated several tests to determine whether a private individual may "fairly be said to be a state actor."

Two of these state actor tests are the "joint action" test and the "symbiotic relationship" test.  Here, while the casino defendants argue that they cannot be held liable under section 1983 pursuant to the "joint action" test, plaintiff contends that they may be held liable under both the "joint action" test and the "symbiotic relationship" test.  We address each test in turn.

## A. Joint Action Test

The casino defendants argue that they are not state actors under the joint action test, and therefore, plaintiff's section 1983 claims must fail as a

matter of law.  While we agree that plaintiff has not produced evidence sufficient to pass this test, plaintiff's section 1983 claims do not warrant dismissal.

Under the joint action test, a private party will be deemed a state actor if it is a "willful participant in joint action with the State or its agents."  Lugar, 457 U.S. at 941.  Moreover, a private entity may only be deemed a state actor, and therefore liable under section 1983, for actions of police officers if: (1) the private entity has a "prearranged plan" with police officers; and (2) under the plan, the police officers will "substitute their [own] judgment" with that of the private entity's.  Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984).

Here, plaintiff has satisfied the first prong of the joint action test, but not the second.  Initially, the evidence demonstrates a custom of interdependency between casino security and state troopers in that they routinely rely on each other to investigate and resolve potential criminal activity inside Mount Airy Casino.  (Moody Dep. at 8, 10, 15, 21-22; Doc. 42-2, Ex. H, Dep. of Lianne Asbury (hereinafter "Asbury Dep.") at 12).

While such evidence presents a genuine issue of material fact regarding the first prong of the joint action test, that is, whether the casino defendants had a "prearranged plan" with the Commonwealth defendants,

8

plaintiff has produced no evidence of the second prong of the joint action test, that the Commonwealth defendants substituted their own judgment with that of the casino defendants.  To the contrary, the undisputed evidence establishes that the Commonwealth defendants, namely State Troopers O'Brien and Nemshick, were the principal actors throughout the alleged course of events.  Defendant Moody, on the other hand, arrived at the State Police office after plaintiff had already been detained and arrested, wrote only a victim/witness statement for the State Police, banned plaintiff from the casino based on information from the Commonwealth defendants, and did not testify at plaintiff's criminal trial.  (Moody Dep. at 22, 28, 42-43 & 44).

In the absence of any evidence suggesting that the State Troopers substituted their own judgment with that of Defendant Moody's, the casino defendants cannot qualify as section 1983 state actors under the joint action test.  Because the joint action test is merely one way to determine whether a private entity may qualify as a section 1983 state actor, however, this finding is not dispositive.[3]

---

[3]  While the joint action test is routinely analyzed with respect to section 1983 conspiracy claims, failure to establish both prongs of this test does not mean that plaintiff's conspiracy claim must also fail.  To the contrary, the joint action test is merely one way to prove that a private party may fairly be said to be a state actor.  In a section 1983 conspiracy claim

**B. Symbiotic Relationship Test**

Plaintiff argues that the casino defendants are state actors under the symbiotic relationship test, and therefore, the casino defendants may be held liable under section 1983.  We agree.

Under the symbiotic relationship test, a private party will be deemed a state actor if "a close association of mutual benefit" exists between the state and the private entity or party.  Crissman v. Dover Downs Entm't, Inc., 289 F.3d 231, 240 (3d Cir. 2002) (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 724 (1961)).  This requires that we "test whether the conduct [complained of] could be linked to the joint beneficial activities[.]"  Crissman, 289 F.3d at 241.

---

against a private entity, the plaintiff's initial burden is to prove that section 1983 applies to the private entity under one of four tests: (1) the "close nexus" test under  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); (2) the "symbiotic relationship" test under Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961); (3) the "joint action" test under Lugar, 457 U.S. at 941; or (4) the "public function" test under Terry v. Adams, 345 U.S. 461, 468-70 (1953).  In this state action inquiry, "more than one test may be relevant[,] . . . the tests may overlap, and one or more prongs of one test may be irreconcilably inconsistent with the prong of another."  Goussis v. Kimball, 813 F. Supp. 352, 357 (E.D. Pa. 1993).  The test to be applied depends upon the circumstances of the case, and the United States Supreme Court has counseled lower courts to investigate carefully the facts of each case.  Id. (citing Burton, 365 U.S. at 722).  After the plaintiff establishes that section 1983 applies, plaintiff's second burden is to prove the elements of conspiracy.

Here, the casino defendants have failed to brief the applicability of the symbiotic relationship test.  Even if they had, viewing the facts in plaintiff's favor, a reasonable jury would conclude that plaintiff has presented evidence sufficient to pass this test.

With respect to the Pennsylvania State Police, Mount Airy Casino houses a State Police office, and state troopers patrol and conduct security functions inside the casino.  (Asbury Dep. at 24; Moody Dep. at 8). Working together, state troopers and casino security investigate incidents, and security officers rely on troopers to remove patrons from the premises. (Moody Dep. at 10, 15).  When a patron is taken to the casino's State Police office, the casino security shift manager is called to respond. (Moody Dep. at 21-22).  Additionally, the casino's director of security meets regularly with state troopers "to decide how we want to protect this property as well as for them to influence and enforce law as well as for us to promote asset protection with our guests and employees."  (Asbury Dep. at 12).

With respect to the Pennsylvania GCB, Mount Airy Casino also houses a GCB office, and a GCB agent is present in the casino twenty-four hours per day.  (Doc. 53-2, Ex. C, Dep. of Def. Christopher Cardoni (hereinafter "Cardoni Dep.") at 6; Asbury Dep. at 21-22).  GCB agents also

enforce casino regulations, monitor the casino floor, and regularly coordinate with security officers.  (Cardoni Dep. at 6, 8-9).

Based on the foregoing, a reasonable jury would conclude that a close association of mutual benefit exists between the casino and Commonwealth defendants.  Specifically, deposition testimony indicates that these defendants operate interdependently for their mutual benefit such that they rely equally on one another to investigate, respond to, and resolve incidents inside the casino.  Thus, plaintiff has established that section 1983 applies to the casino defendants under the symbiotic relationship test.

## II. Substance of Section 1983 Claims

Having determined that the casino defendants may be state actors under section 1983, the casino defendants next argue that their conduct failed to deprive plaintiff of his constitutional rights.  Specifically, the casino defendants seek summary judgment on Counts I, III, V, VII, XI, and XIII, plaintiff's respective section 1983 excessive force, assault, unlawful arrest, conspiracy, malicious prosecution, and vicarious liability claims.  We address each in turn.

## A. Excessive Force, Assault, and Unlawful Arrest

The casino defendants first move for summary judgment on Counts I, III, and V, plaintiff's respective section 1983 excessive force,[4] assault,[5] and unlawful arrest claims.[6]  Plaintiff admits that Defendant Moody did not have authority to arrest him and that Defendant Moody did not have any physical interaction with him.  (Pl.'s SOF ¶¶ 4, 6).  Additionally, plaintiff has failed to establish that Defendant Moody influenced or encouraged the Commonwealth defendants in any way to use excessive force, assault, or

---

[4]  Where an alleged use of excessive force occurs in the context of an arrest, the claim "is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Johnson v. City of Phila., 837 F.3d 343, 349 (3d Cir. 2016) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  To prevail on a Fourth Amendment excessive force claim, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable under the circumstances." Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011) (citing Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989)).

[5]  While excessive force claims, which often contemplate the elements of assault and battery, may be brought pursuant to section 1983, supplemental assault and battery claims are properly brought pursuant to state law.

[6]  "It is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause.'" Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citation omitted)).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. (quoting Orsatti, 71 F.3d at 483) (internal quotation marks omitted).

arrest him.  Plaintiff cannot prove these claims in the absence of such

evidence, and therefore, we will grant the casino defendants' motion on

plaintiff's section 1983 excessive force, assault, and unlawful arrest claims,

and we will dismiss Counts I, III, and V with respect to Defendant Moody.

### B. Conspiracy

The casino defendants next move for summary judgment on Count

VII, plaintiff's section 1983 conspiracy claim.  To establish a conspiracy

claim under section 1983, a plaintiff must establish both the applicability of

section 1983 and the Pennsylvania state law elements of a civil conspiracy.

Dice v. Johnson, 711 F. Supp. 2d 340, 357 (M.D. Pa. 2010) (citing

Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).  "A civil

conspiracy is a combination of two or more persons acting in concert to

commit an unlawful act, or to commit a lawful act by unlawful means, the

principal element of which is an agreement between the parties to inflict a

wrong against or injury upon another, and an overt act that results in

damage."  Id. (quoting Adams v. Teamsters Local 115, 214 F. App'x 167,

172 (3d Cir. 2007) (citations omitted)).

Here, plaintiff has already established that section 1983 applies to the

casino defendants under the symbiotic relationship test.  Additionally,

plaintiff's evidence presents a genuine issue of material fact as to whether

the casino and Commonwealth defendants agreed to violate plaintiff's rights. In particular, plaintiff testified that while he was shackled to a bench inside the State Police office, State Trooper O'Brien pushed him face down into the floor and intentionally twisted his ankle until it broke. (Pl. Dep. at 24-26). Plaintiff further testified that while O'Brien twisted his leg, O'Brien said, "Congratulations, you just assaulted an officer." (Pl. Dep. at 26). This account is contrary to that of Defendant Moody, who testified that plaintiff tried to kick State Trooper O'Brien, but O'Brien caught plaintiff's leg and pushed him down toward the floor. (Moody Dep. at 32-34).

Believing plaintiff's testimony, a reasonable jury could find that the casino and Commonwealth defendants agreed to adopt Defendant Moody's account of the circumstances leading to plaintiff's injury and subsequent criminal charges arising out of those circumstances. Viewing the evidence in a light most favorable to plaintiff, plaintiff has produced evidence sufficient to establish a conspiracy. As such, we will deny the casino defendants' motion for summary judgment with respect to Count VII, plaintiff's section 1983 conspiracy claim.

## C. Malicious Prosecution

The casino defendants next move for summary judgment on Count XI, plaintiff's section 1983 malicious prosecution claim. To prevail on a

Fourth Amendment malicious prosecution claim under section 1983, a

plaintiff must demonstrate that: (1) the defendants initiated a criminal

proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the

proceeding was initiated without probable cause; (4) the defendants acted

maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of

seizure as a consequence of a legal proceeding. Black v. Montgomery

Cty., 835 F.3d 358, 364 (3d Cir. 2016) (quoting Johnson v. Knorr, 477 F.3d

75, 82 (3d Cir. 2007) (internal quotation marks omitted)).

Regarding the first element, "[a]lthough prosecutors rather than police

officers are generally responsible for initiating criminal proceedings, an

officer may, however, be considered to have initiated a criminal proceeding

if he . . . knowingly provided false information to the prosecutor or

otherwise interfered with the prosecutor's informed discretion." Henderson

v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (citations and

internal quotations omitted); see also Gallo v. City of Phila., 161 F.3d 217,

220 n.2 (3d Cir. 1998) ("Decisions have recognized that a § 1983 malicious

prosecution claim might be maintained against one who furnished false

information to, or concealed information from, prosecuting authorities.").

"[I]t is not necessary that defendant initiate the proceedings himself[,]" as

16

"[l]iability for malicious prosecution can also attach when defendant influences a third party to initiate the proceedings." Bristow v. Clevenger, 80 F. Supp. 2d 421, 432-33 (M.D. Pa. 2000) (citations omitted).

Here, plaintiff has failed to establish that Defendant Moody, a casino security officer, initiated a criminal proceeding.  Although Moody prepared a victim/witness statement for the State Police regarding the altercation he observed between plaintiff and the Commonwealth defendants, plaintiff points to no evidence suggesting that Moody knowingly provided false information to prosecutors or otherwise influenced them to initiate the criminal proceedings.

At this juncture, the evidentiary materials of record would be insufficient to carry plaintiff's burden of proof at trial on his section 1983 malicious prosecution claim against Defendant Moody.  Specifically, plaintiff cannot prove the first element of his claim, that Moody initiated a criminal proceeding against him.  As a result, we will grant the casino defendants' motion for summary judgment on plaintiff's section 1983 malicious prosecution claim, and we will dismiss Count XI with respect to Defendant Moody.

### D. Vicarious Liability

The casino defendants next move for summary judgment on Count XIII, plaintiff's section 1983 vicarious liability claim.  Under section 1983, a private corporation "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2005) (footnote omitted) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Rather, to establish a viable section 1983 claim against a private entity, a plaintiff must demonstrate that the entity had a policy, practice, or custom that caused the constitutional violation alleged.  Id. at 583-84 (citing Bd. Of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997)).

Here, the record presents a genuine issue of material fact as to whether whether casino custom caused plaintiff's alleged constitutional violation.  Plaintiff contends that casino custom allowed casino security and State Troopers to act interdependently, and that this practice allowed State Troopers O'Brien and Nemshick, GCB Agent Cardoni, and security officer Moody to conspire against plaintiff.

In support of his contention, plaintiff cites Defendant Moody, who testified that state troopers patrol and conduct security functions inside the

casino.  (Moody Dep. at 8).  Working together, casino security and the

State Police investigate incidents inside the casino, and security officers

rely on troopers to remove patrons from the premises.  (Moody Dep. at 10,

15).  When a patron is taken to the State Police office inside the casino, the

casino security shift manager is called to respond.  (Moody Dep. at 21-22).

Additionally, Mount Airy Security Director Lianne Asbury testified that

although State Police and security officers do not attend the same formal

trainings, she meets with state troopers "to decide how we want to protect

this property as well as for them to influence and enforce law as well as for

us to promote asset protection with our guests and employees."  (Asbury

Dep. at 12).

Viewing this evidence in a light most favorable to plaintiff, plaintiff has

established that Mount Airy Casino's custom of interdependency between

its own security officers and State Police may have caused plaintiff's

alleged constitutional violation.  As such, we will deny the casino

defendants' motion for summary judgment on Count XIII, plaintiff's section

1983 vicarious liability claim.

## III. State Law Claims

The casino defendants also move for summary judgment on Counts

II, IV, VI, VIII, IX, X, and XII, plaintiff's respective state law battery, assault,

19

false imprisonment, conspiracy, IIED, NIED, and malicious prosecution claims.  We address each in turn.

### A.  Battery

The casino defendants move for summary judgment on Count II, plaintiff's state law battery claim.  Under Pennsylvania law, battery is the intentional, unconsented, and either harmful or offensive contact with another's person.  Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012) (citations omitted).

Here, plaintiff admits that Defendant Moody did not have any physical interaction with him.  (Pl.'s SOF ¶ 6).  Plaintiff cannot prove battery in the absence of such a physical interaction, and therefore, we will grant the casino defendants' motion on plaintiff's state law battery claim.  As we have already dismissed Count II with respect to the Commonwealth defendants, we will now dismiss Count II in its entirety.

### B.  Assault

The casino defendants next move for summary judgment on Count III, plaintiff's state law assault claim.  Under Pennsylvania law, assault is the intentional attempt to cause imminent apprehension of a harmful or offensive contact with another's person.  Sides v. Cleland, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citation omitted).  Relevant here, "Pennsylvania

case law suggests that a defendant cannot be held liable for assault if he was not the principal actor, was not present at the scene of the assault, and did not otherwise specifically cause the assault to occur." Lakits v. York, 258 F. Supp. 2d 401, 407-08 (E.D. Pa. 2003) (citing Sides, 648 A.2d at 796; D'Errico v. DeFazio, 763 A.2d 424, 431 (Pa. Super. Ct. 2000)).

Here, the undisputed evidence establishes that Defendant Moody was not the principal actor.  While Moody may have been present at the scene of the alleged assault, plaintiff has not produced, nor does the record reflect, any evidence that Moody caused or influenced the alleged assault. Plaintiff cannot prove assault in the absence of such evidence, and therefore, we will grant the casino defendant's motion on plaintiff's state law assault claim.  As we have already dismissed Count III with respect to the Commonwealth defendants, we will now dismiss Count III in its entirety.

### C. False Imprisonment

The casino defendants next move for summary judgment on Count VI, plaintiff's state law false imprisonment claim.  Under Pennsylvania law, an actor may be liable for false imprisonment if: (1) he acts intending to confine the other or a third person within boundaries fixed by the actor; (2) his act directly or indirectly results in such a confinement; and (3) the other

is conscious of the confinement or is harmed by it.   Gagliardi v. Lynn, 285

A.2d 109, 1111 n.2 (Pa. 1971) (quoting Restatement (Second) of Torts

§ 35).

In the context of a seizure by a state officer, the plaintiff must

establish: (1) the detention of another person; and (2) the unlawfulness of

such detention.   Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

An arrest, or detention related to arrest, is unlawful if made without

probable cause, and "an arrest based upon probable cause would be

justified, regardless of whether the individual arrested was guilty or not."[7]

Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (quoting

Renk, 641 A.2d at 293).   Probable cause exists "when the facts and

circumstances which are within the knowledge of the police officer at the

time of the arrest, and of which he has reasonably trustworthy information,

are sufficient to warrant a man of reasonable caution in the belief that the

suspect has committed or is committing a crime."   Renk, 641 A.2d at 293

(quoting Commonwealth v. Rodriguez, 585 A.2d 988, 990 (Pa. 1991))

(internal quotation marks omitted).

---

[7]  Under Pennsylvania law, "false arrest and false imprisonment are
essentially the same actions."   Watson v. Witmer, 183 F. Supp. 3d 607, 617
(M.D. Pa. 2016) (citations and internal quotation marks omitted); Gagliardi,
285 A.2d at 111-112.

Here, plaintiff admits that Defendant Moody did not have authority to arrest him and that Defendant Moody did not have any physical interaction with him.  (Pl.'s SOF ¶¶ 4, 6).  Plaintiff has not produced, nor does the record reflect, any evidence that Moody assisted State Police when they escorted plaintiff off the dance floor and initially detained him.  Although plaintiff contends that all defendants agreed to unlawfully detain plaintiff in order to cover up injuries caused by Defendant O'Brien, plaintiff's contentions are more applicable to his conspiracy claim against the casino defendants rather than a false imprisonment claim.  Moreover, plaintiff's evidence does not demonstrate how Moody intentionally acted to confine plaintiff within boundaries fixed by Moody.  Plaintiff cannot prove false imprisonment in the absence of such evidence, and therefore, we will grant the casino defendant's motion on plaintiff's state law false imprisonment claim.  As we have already dismissed Count VI with respect to the Commonwealth defendants, we will now dismiss Count VI in its entirety.

### D. Conspiracy

The casino defendants next move for summary judgment on Count VIII, plaintiff's state law conspiracy claim.  As previously discussed, a plaintiff pursuing a section 1983 conspiracy claim must prove the Pennsylvania state law elements of a civil conspiracy.  <u>Dice</u>, 711 F. Supp.

2d at 357 (citing <u>Ammlung</u>, 494 F.2d at 814).  Because we have already

determined that the casino defendants are not entitled to summary

judgment on  plaintiff's section 1983 conspiracy claim, we will rely on our

analysis in Part II(B) above and deny the casino defendants' motion with

respect to Count VIII, plaintiff's state law conspiracy claim.

### E. Malicious Prosecution

The casino defendants next move for summary judgment on Count

XII, plaintiff's state law malicious prosecution claim.  The first four elements

of a section 1983 malicious prosecution claim are the same as those under

Pennsylvania law.  <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 n.2 (3d Cir.

2009).  Having previously concluded that the casino defendants are entitled

to summary judgment on plaintiff's section 1983 malicious prosecution

claim, we will rely on our analysis in Part II(C) above and grant the casino

defendants' motion on plaintiff's state law malicious prosecution claim.  As

we have already dismissed Count XII with respect to the Commonwealth

defendants, we will now dismiss Count XII in its entirety.

### F. Intentional Infliction of Emotional Distress

The casino defendants next move for summary judgment on Count

IX, plaintiff's state law intentional infliction of emotional distress (hereinafter

"IIED") claim.  To establish a cause of action for IIED under Pennsylvania

law, "a plaintiff must prove that the defendant 'by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress.'" Gray v. Huntzinger, 147 A.3d 924, 927 (Pa. Super. Ct. 2016) (quoting Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987) (citations omitted)). Moreover, "existence of the alleged emotional distress must be supported by competent medical evidence." Id. at 928 (quoting Kazatsky, 527 A.2d at 995).

Here, Plaintiff has offered no evidence to establish how Defendant Moody intentionally inflicted emotional distress upon him. He broadly avers that Moody remained in the State Police office for approximately forty-five minutes to one-and-one-half hours while plaintiff complained of ankle pain. This averment alone, however, even when viewed in a light most favorable to plaintiff, does not amount to extreme and outrageous conduct. Moreover, plaintiff has produced no competent medical evidence of emotional distress. Plaintiff cannot prove IIED in the absence of such evidence, and therefore, we will grant the casino defendants' motion on plaintiff's state law IIED claim. As we have already dismissed Count IX with respect to the Commonwealth defendants, we will now dismiss Count IX in its entirety.

## G. Negligent Infliction of Emotional Distress

The casino defendants next move for summary judgment on Count X, plaintiff's state law negligent infliction of emotional distress (hereinafter "NIED") claim.  Under Pennsylvania law, a cause of action for NIED is restricted to four factual scenarios: (1) the defendant had a contractual or fiduciary duty toward the plaintiff; (3) the plaintiff suffered a physical impact; (3) the plaintiff was in the zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.  Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 217 (Pa. Super. Ct. 2012) (citing Toney v. Chester Cty. Hosp., 961 A.2d 192, 198 (Pa. Super. Ct. 2008), aff'd, 36 A.3d 83, 102-103 (Pa. 2011) (per curiam)).  To maintain such a claim, the plaintiff must also demonstrate a physical manifestation of emotional distress.  See Toney, 961 A.2d at 200 (citing Love v. Cramer, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992).

Here, Plaintiff has offered no evidence to establish how Defendant Moody negligently inflicted emotional distress upon him.  Specifically, he has failed to aver which NIED factual scenario applies to his claim, and he has produced no medical evidence of a physical manifestation of emotional distress.  Plaintiff cannot prove NIED in the absence of such evidence, and therefore, we will grant the casino defendants' motion on plaintiff's state law

IIED claim.  As we have already dismissed Count X with respect to the

Commonwealth defendants, we will now dismiss Count X in its entirety.

### IV. Punitive Damages

Finally, the casino defendants move for summary judgment on

plaintiff's punitive damages claim.  In a section 1983 case, "[a] jury may

award punitive damages when it finds reckless, callous, intentional or

malicious conduct."  Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006)

(citing Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000); Smith v.

Wade, 461 U.S. 30, 54-56 (1983)).  "[T]he defendant's conduct must be, at

a minimum, reckless or callous."  Id. (quoting Savarese v. Agriss, 883 F.2d

1194, 1204 (3d Cir. 1989)) (internal quotation marks omitted).  "Punitive

damages might also be allowed if the conduct is intentional or motivated by

evil motive, but the defendant's action need not necessarily meet this

higher standard."  Id. (quoting Savarese, 883 F.2d at 1204) (internal

quotation marks omitted).

Similarly, under Pennsylvania law, "punitive damages are an 'extreme

remedy' available in only the most exceptional matters."  Phillips v. Cricket

Lighters, 883 A.2d 439, 445 (Pa. 2005) (citations omitted).  "Punitive

damages may be appropriately awarded only when the plaintiff has

established that the defendant has acted in an outrageous fashion due to

either the defendant's evil motive or his reckless indifference to the rights of others."  Id. (citation and internal quotation marks omitted).

At this juncture, viewing the evidence in a light most favorable to plaintiff, plaintiff has produced evidence sufficient to establish punitive damages.  As explained above, a reasonable jury could believe plaintiff's testimony that, while he was handcuffed and shackled to a bench inside the State Police office, Defendant State Trooper Thomas O'Brien threw him to the ground and intentionally broke his ankle.  A reasonably jury could further believe that all defendants then agreed to fabricate the circumstances of plaintiff's injury and charge him with several criminal acts arising out of those circumstances.  At the very least, such conduct, if true, is evidence of recklessness.  As a result, we will deny the casino defendant's motion for summary judgment on plaintiff's punitive damages claim.

**Conclusion**

Based upon the above reasoning, we will grant the casino defendants' motion for summary judgment with respect to Counts I, II, III, IV, V, VI, IX, X, XI, and XII.  Furthermore, we will deny the motion with respect to Counts VII, VIII, and XIII, as well as plaintiff's punitive damages claim.  Thus, based upon our rulings on the Commonwealth and casino

defendants' motions for summary judgment, remaining in this case are the

following claims and parties: Count I, section 1983 excessive force claim

against the Commonwealth defendants; Count III, section 1983 assault

claim against the Commonwealth defendants; Count V, section 1983

unlawful arrest claim against the Commonwealth defendants; Count VII,

section 1983 conspiracy claim against the Commonwealth defendants and

Defendant Moody; Count VIII, state law conspiracy claim against

Defendant Moody; and Count XIII, vicarious liability claim against

Defendant Mount Airy Casino.[8]  An appropriate order follows.

**Date: March 7, 2017**                **s/ James M. Munley**
                                       **JUDGE JAMES M. MUNLEY**
                                       **United States District Court**

---

[8]  Plaintiff has named multiple John and Jane Doe casino employee
defendants.  "Doe defendants 'are routinely used as stand-ins for real
parties until discovery permits the intended defendants to be installed.'"
Hindes v. F.D.I.C., 137 F.3d 418, 155 (3d. Cir. 1998) (quoting Scheetz v.
Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa.1990)).  Because plaintiff
failed to install named defendants for his "Doe defendant" stand-ins by the
court's discovery deadline, November 30, 2015 (Doc. 34), we will also
dismiss John Doe Casino Defendants #1-25 and Jane Doe Casino
Defendants #1-25.