## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYAN A. HEILIMANN,** | : | **No. 3:14cv1271** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **STATE TROOPER THOMAS O'BRIEN,** | : | |
| **Individually and as a State Trooper** | : | |
| **for the Commonwealth of** | : | |
| **Pennsylvania; STATE TROOPER** | : | |
| **PETER P. NEMSHICK, Individually** | : | |
| **and as a State Trooper for the** | : | |
| **Commonwealth of Pennsylvania;** | : | |
| **CORY MOODY; AGENT** | : | |
| **CHRISTOPHER CARDONI,** | : | |
| **Individually and as an employee of** | : | |
| **the Pennsylvania Gaming Control** | : | |
| **Board; MOUNT AIRY, NO. 1, LLC** | : | |
| **d/b/a MT. AIRY CASINO; JOHN DOE** | : | |
| **CASINO DEFENDANTS #1-25,** | : | |
| **Individually and as employees of Mt.** | : | |
| **Airy Casino; and JANE DOE CASINO** | : | |
| **DEFENDANTS #1-25, Individually and** | : | |
| **as employees of Mt. Airy Casino,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Ryan A. Heilimann (hereinafter "plaintiff") avers that two

Pennsylvania state troopers, a Pennsylvania Gaming Control Board

(hereinafter "GCB") agent, and casino security violated Pennsylvania state

law and his civil rights under 42 U.S.C. § 1983 (hereinafter "section 1983")

for events related to his detainment and arrest inside Mount Airy Casino.

Before the court for disposition is Defendants State Trooper Thomas O'Brien, State Trooper Peter P. Nemshick, and GCB Agent Christopher Cardoni's (collectively "the Commonwealth defendants") motion for partial summary judgment on plaintiff's section 1983 malicious prosecution claim. (Doc. 43).  For the reasons that follow, we will grant the motion.

**Background**

On August 25, 2012, plaintiff visited Gypsies nightclub inside Mount Airy Casino in Mount Pocono, Pennsylvania.  (Defs.' Statement of Material Facts (hereinafter "SOF") ¶¶ 1-2).[1]  While dancing with a woman, plaintiff was escorted off the dance floor by Defendant State Troopers O'Brien and Nemshick along with casino employees.  (SOF ¶ 2).   After a casino employee physically led plaintiff from the dance floor, State Trooper O'Brien pushed plaintiff against a rack of chairs in the hallway.  (SOF ¶ 3). A verbal exchange ensued, and troopers then arrested and escorted plaintiff to the Pennsylvania State Police office located inside the casino. (SOF ¶ 4).

---

[1]  We cite to the Commonwealth defendants' SOF for statements with which plaintiff generally agrees.  (See Doc. 54-1, Pl.'s Statement of Material Facts (hereinafter "Pl.'s SOF")).  Also, because the Commonwealth defendants have accepted Pl.'s SOF where their versions of the facts diverge (see Doc. 46, Defs.' Br. in Supp. at 2, n.1), we also cite to Pl.'s SOF for "further explanations" provided by plaintiff.

Subsequent to plaintiff's arrest, Defendant GCB Agent Cardoni arrived at the State Police office.  (SOF ¶ 5).  Inside the office, State Trooper O'Brien threw plaintiff, who was handcuffed and had one leg shackled to a bench, to the ground, and broke plaintiff's ankle.  (SOF ¶ 6; Pl.'s SOF ¶ 6).  State Troopers O'Brien and Nemshick eventually took plaintiff to Pocono Medical Center, and then to the Monroe County Correctional Facility.  (SOF ¶ 8).

As a result of the night's events, the Commonwealth charged plaintiff with aggravated assault under 18 PA. CONS. STAT. ANN. § 2702(a)(3), resisting arrest under 18 PA. CONS. STAT. ANN. § 5104, disorderly conduct under 18 PA. CONS. STAT. ANN. § 5503(a)(1), harassment under 18 PA. CONS. STAT. ANN. § 2709(a)(1), and public drunkenness under 18 PA. CONS. STAT. ANN. § 5505.  (SOF ¶ 9; Pl.'s SOF ¶ 9).  A jury found plaintiff not guilty of aggravated assault and disorderly conduct, and a Monroe County Court of Common Pleas judge dismissed plaintiff's resisting arrest charge on a motion for judgment of acquittal.  (SOF ¶ 11; Pl.'s SOF ¶ 11). The judge, however, found plaintiff guilty of harassment and public drunkenness.  (SOF ¶ 11).

On July 1, 2014, plaintiff filed a thirteen-count complaint against the Commonwealth defendants as well as Mount Airy Casino and casino

3

security officer Cory Moody (collectively "the casino defendants").  The sole count relevant to the instant motion, Count XI, asserts a section 1983 malicious prosecution claim against the Commonwealth defendants.[2] (Doc. 1, Compl.).

On March 7, 2016, the Commonwealth defendants moved for partial summary judgment on plaintiff's section 1983 malicious prosecution claim. (Doc. 43).  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to section 1983 for a violation of plaintiff's constitutional rights, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[2]  Counts I, III, V, VII, and XI allege civil rights violations under section 1983 against all defendants, excluding Mount Airy Casino.  Counts II, IV, VI, VIII-X, and XII also assert respective Pennsylvania state law assault, battery, false imprisonment, conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution claims against Defendant Moody.  Count XIII asserts a vicarious liability claim against Defendant Mount Airy Casino.  The casino defendants have moved for summary judgment on these claims, and they are addressed in a separate memorandum.

**Standard of Review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the

5

evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  <u>Id.</u> at 324.

**Discussion**

The Commonwealth defendants move for partial summary judgment on Count XI, plaintiff's section 1983 malicious prosecution claim.  Plaintiff does not oppose the motion with respect to GCB Agent Cardoni (Doc. 54, Pl.'s Br. in Opp'n at 4, n.1), and therefore, we will grant as unopposed the motion with respect to Defendant Cardoni.  For the following reasons, we will also grant the motion with respect to Defendants O'Brien and Nemshick.

**I. Malicious Prosecution under Section 1983**

Count XI asserts a section 1983 malicious prosecution claim against Defendants O'Brien and Nemshick.  Section 1983 does not, by its own terms, create substantive rights; rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal

6

law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section

1983 states, in pertinent part,

> Every person who, under the color of any statute,
> ordinance, regulation, custom, or usage, of any State or
> territory or the District of Columbia, subjects, or causes to
> be subjected, any citizens of the United States or other
> person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two

criteria must be met.  First, the conduct complained of must have been

committed by a person acting under color of state law.  Kaucher v. Cty. of

Bucks, 455 F.3d 418 (3d Cir. 2006) (citing Am. Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 49-50 (1999)).  Second, the conduct must deprive

the plaintiff of rights secured under the Constitution or federal

law.  Id. (citing Am. Mfrs., 526 U.S. at 49-50).

As Defendants O'Brien and Nemshick are Pennsylvania state

troopers, the Commonwealth defendants do not dispute that they acted

under the color of state law on the night of August 25, 2012.  Instead, they

challenge only plaintiff's assertion that they deprived him of his

constitutional right under the Fourth Amendment to be secure against

unreasonable seizure, a right routinely invoked in section 1983 malicious

prosecution claims.

To prevail on a Fourth Amendment malicious prosecution claim under section 1983, a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>Black v. Montgomery Cty.</u>, 835 F.3d 358, 364 (3d Cir. 2016) (quoting <u>Johnson v. Knorr</u>, 477 F.3d 75, 82 (3d Cir. 2007) (internal quotation marks omitted)).

The Commonwealth defendants challenge only the first, second, and fifth elements of this standard.  We will address each in turn.

### A. Initiation of a Criminal Proceeding

The first element of a section 1983 malicious prosecution claim requires plaintiff to demonstrate that the defendants initiated a criminal proceeding.  <u>Black</u>, 835 F.3d at 364 (quoting <u>Johnson</u>, 477 F.3d at 82) (internal quotation marks omitted).

The Commonwealth defendants first argue that State Trooper O'Brien is entitled to summary judgment because he played no role in initiating criminal proceedings against plaintiff.  Specifically, they argue that only State Trooper Nemshick initiated the criminal proceedings against plaintiff

because he served as the affiant on the criminal complaint.  Plaintiff avers that State Trooper Nemshick relied on information provided by State Trooper O'Brien when charging plaintiff, and therefore, both state troopers initiated criminal proceedings.  After a careful review, we agree with the Commonwealth defendants.

"Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he . . . knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012); see also Gallo v. City of Phila., 161 F.3d 217, 220 n.2 (3d Cir. 1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities.").  "[I]t is not necessary that defendant initiate the proceedings himself[,]" as "[l]iability for malicious prosecution can also attach when defendant influences a third party to initiate the proceedings."  Bristow v. Clevenger, 80 F. Supp. 2d 421, 432-33 (M.D. Pa. 2000) (citations omitted).

Here, plaintiff argues that a genuine issue of material fact exists as to whether Defendant O'Brien provided false information to, and potentially

9

conspired with, Defendant Nemshick.  Plaintiff's arguments, however, amount to suppositions lacking evidentiary support.  While Defendant Nemshick may have relied on information provided to him by Defendant O'Brien, plaintiff points to no evidence suggesting that Defendant O'Brien knowingly provided false information to Defendant Nemshick, let alone a prosecutor, or otherwise influenced Defendant Nemshick to initiate the criminal proceedings.

At this juncture, the evidentiary materials of record would be insufficient to carry plaintiff's burden of proof at trial on his section 1983 malicious prosecution claim against Defendant O'Brien.  Specifically, plaintiff cannot prove the first element of his claim, that Defendant O'Brien initiated a criminal proceeding against him.  As a result, we will grant the Commonwealth defendants' motion for summary judgment with respect to Defendant O'Brien.  Our analysis continues only with respect to Defendant Nemshick.

### B. Favorable Termination of Criminal Proceedings

The second element of a section 1983 malicious prosecution claim requires plaintiff to demonstrate that the prior criminal proceeding ended in plaintiff's favor.  Black, 835 F.3d at 364 (quoting Johnson, 477 F.3d at 82) (internal quotation marks omitted).

The Commonwealth defendants argue that they are entitled to summary judgment because plaintiff was convicted of public drunkenness and harassment in state court, and therefore, his criminal proceeding did not end favorably. Plaintiff contends that these convictions arose out of circumstances separate from his charges of aggravated assault, disorderly conduct, and resisting arrest, of which he was acquitted and on which he bases his entire malicious prosecution claim. As such, plaintiff avers that his state criminal proceeding ended favorably. After a careful review, we agree with plaintiff.

To satisfy the favorable termination element, "a prior criminal case must have been disposed of in a way that indicates the innocence of the accused . . . ." Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (footnote omitted) (citing Donahue v. Gavin, 280 F.3d 371 (3d Cir. 2002) (holding that prosecutor's election to *nol pros* case after appellate court directed retrial due to instruction error did not indicate plaintiff's innocence); Gilles v. Davis, 427 A.3d 197 (3d Cir. 2005) (holding that a criminal defendant's entry into Pennsylvania's Accelerated Rehabilitation Disposition program is not consistent with innocence). A plaintiff in a section 1983 malicious prosecution claim may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated

in, among other things, an acquittal.  Kossler, 564 F.3d at 187 (citations omitted).

Critically, "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole."  Id. at 188.  "Rather . . ., upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged."  Id. If the statutory offenses and the facts of the case "indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element."  Id.

The favorable termination rule will not apply where all criminal charges arise from the same course of conduct and are "predicated on the same factual basis."  Id. at 189.  Conversely, the favorable termination rule will apply where "the unlawful behavior underlying [the plaintiff's convictions] is wholly separate from the unlawful behavior triggering the criminal charges and a claim of malicious prosecution."  Piazza v. Lakkis, No. 3:11-CV-2130, 2012 WL 2007112, at *10 (M.D. Pa. June 5, 2012); Jackson v. Nassan, No. 2:08-CV-1054, 2009 WL 2707447, at *4-5 (W.D. Pa. Aug. 26, 2009).

Here, we must determine whether plaintiff's convictions for public drunkenness and harassment are predicated on the same factual basis as his charges of aggravated assault, disorderly conduct, and resisting arrest, of which he was acquitted.  The criminal complaint in this matter establishes that the charges of which a judge found plaintiff guilty, harassment and public drunkenness, were predicated on acts plaintiff committed while dancing.  Specifically, the criminal complaint avers that plaintiff committed harassment when he "subject[ed] a female patron to unwanted physical contact by kissing her and grabbing her buttocks[.]" (Doc. 54-3, Crim. Compl. (hereinafter "Crim. Compl.") at 6).  It further avers that plaintiff committed public drunkenness when he "appear[ed] in a public place manifestly under the influence of alcohol" such that he "may have endangered himself or other persons or property, or annoy[ed] persons in his vicinity[.]"  (Crim Compl. at 7).  These acts led casino security to approach plaintiff and escort him from the dance floor.  Only <u>supplemental</u> acts <u>after</u> plaintiff's removal gave rise to the additional charges of aggravated assault, resisting arrest, and disorderly conduct, of which a jury acquitted plaintiff.  Thus, the unlawful behavior underlying plaintiff's convictions is wholly separate from the unlawful behavior triggering the criminal charges underlying his malicious prosecution claim.

13

Viewing the record in a light most favorable to plaintiff, we find that plaintiff's criminal case ended in a way that indicates his innocence, and therefore, terminated favorably for purposes of his section 1983 malicious prosecution claim.

## C. Deprivation of Liberty

Finally, the fifth element of a section 1983 malicious prosecution claim requires plaintiff to demonstrate that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Black, 835 F.3d at 364 (quoting Johnson, 477 F.3d at 82) (internal quotation marks omitted).

The Commonwealth defendants argue that plaintiff did not suffer a deprivation of liberty because he was released from incarceration on unsecured bail and only required to attend court proceedings thereafter. Plaintiff argues that he suffered several pretrial restrictions amounting to a deprivation of liberty.  After a careful review, we agree with the Commonwealth defendants.

A section 1983 malicious prosecution claim must be judged under the Fourth Amendment to the United States Constitution—which guarantees the right of the people to be secure against unreasonable searches and seizures—rather than substantive due process.  See Albright v. Oliver, 510

U.S. 266, 271 (1994).  The Third Circuit Court of Appeals has adopted the "continuing seizure" theory, which holds that "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." Schneyder v. Smith, 653 F.3d 313, 321-22 (3d Cir. 2011).

Under the continuing seizure theory, "[p]re-trial restrictions of liberty aimed at securing a suspect's court attendance are all 'seizures' . . . [because] the difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the degree of resolution on the individual's liberty, not in the kind of restriction."  Black, 835 F.3d at 367 (quoting Schneyder, 653 F.3d at 320) (emphasis in original); compare Gallo, 161 F.3d at 222-25 (holding that the plaintiff was "seized" because he had to post a $10,000 bond, attend court hearings, contact Pretrial Services on a weekly basis, and was prohibited from travelling outside of Pennsylvania and New Jersey) with DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) (holding that the plaintiffs were not "seized" because they were only required to attend court hearings; they were never arrested, never posted bail, free to travel, and did not have to report to pretrial services).

Here, we find that plaintiff did not suffer a deprivation of liberty consistent with a Fourth Amendment seizure for two reasons.  First, although plaintiff argues that his initial detainment and arrest inside the casino amount to a seizure, plaintiff's argument applies to a section 1983 false arrest claim rather than a section 1983 malicious prosecution claim.[3] Because the Commonwealth defendants do not challenge plaintiff's false arrest claim here, we need not address plaintiff's argument any further.

Second, the pretrial restrictions imposed on plaintiff do not amount to a deprivation of his liberty.  Plaintiff maintains that he suffered four pretrial restrictions: (1) release on unsecured bail bond[4]; (2) appear at all subsequent court hearings; (3) obey all further orders of the bail authority;

---

[3] While a section 1983 false arrest claim "covers damages only for the time of detention until the issuance of process or arraignment, and not more," a malicious prosecution claim "permits damages for confinement imposed pursuant to legal process." Johnson, 477 F.3d at 82 (internal quotation marks and citations omitted; emphasis added).

[4] Plaintiff cites Pennsylvania Rule of Criminal Procedure 524(C)(3) as indicative of his release on unsecured bail.  Rule 524 provides, in relevant part,
> (C) The types of release on bail are:
> . . .
> (1) Release on Unsecured Bail Bond: Release conditioned upon the defendant's written agreement to be liable for a fixed sum of money if he or she fails to appear as required or fails to comply with the conditions of the bail bond.  No money or other form of security is deposited.

PA. R. CRIM. P. 524(C)(3).

16

and (4) provide written notice of any change of address within forty-eight (48) hours of the day of the change.[5]

To begin, unlike the plaintiff in <u>Gallo</u>, 161 F.3d at 222-25, who posted a $10,000 bond for release from incarceration, plaintiff's release on an unsecured bail bond did not require him to actually deposit money or any other form of security for his release from incarceration  <u>See</u> PA. R. CRIM. P. 524(C)(3) ("No money or other form of security is deposited.").  Rather, plaintiff's release was conditioned only on his own written word and agreement to incur liability for any future failure to comply with his other bail conditions.

Next, plaintiff's bail conditions required that he appear at all subsequent court hearings.  This requirement alone, however, does not amount to a deprivation of liberty.  <u>DiBella</u>, 407 F.3d at 603.  The

---

[5]  Plaintiff cites Pennsylvania Criminal Rule of 526 as indicative of his bail conditions.  Rule 526 provides, in relevant part,

> (A) In every case in which a defendant is released on bail, the conditions of the bail bond shall be that the defendant will:
>> (1) appear at all times required until full and final disposition of the case;
>> (2) obey all further orders of the bail authority;
>> (3) give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change; . . . .

PA. R. CRIM. P. 526.

requirement that plaintiff "obey all further orders of the bail authority," in and

of itself, falls equally short of a deprivation, and plaintiff does not point to

any evidence suggesting that the bail authority ever imposed additional

orders rising to a level of something more.

Finally, like the plaintiff in DiBella, 407 F.3d at 603, plaintiff was never

required to contact pretrial services prior to trial, nor was he prohibited from

travelling.  To the contrary, plaintiff, like any unrestricted citizen, had carte

blanche to travel whenever, however, and wherever he pleased without

restriction from the bail authority.  Plaintiff could even change addresses if

he wished, and was not required to seek approval of such a change from

the bail authority prior to doing so.  Rather, plaintiff was merely required to

inform the bail authority of any address change within forty-eight (48) hours

of the date of the change, a requirement that could hardly be construed as

a deprivation of liberty.  Ultimately, we consider these restrictions

analogous to those imposed in DiBella, 407 F.3d at 603, where the plaintiff

was merely required to attend pretrial and trial proceedings.

At this juncture, the evidentiary materials of record would be

insufficient to carry plaintiff's burden of proof at trial on his section 1983

malicious prosecution claim against Defendant Nemshick.  Specifically,

plaintiff cannot prove that he suffered a deprivation of liberty consistent with

the concept of seizure as a consequence of a legal proceeding.  As a result, we will grant the Commonwealth defendants' motion for summary judgment with respect to Defendant Nemshick.

**Conclusion**

Based upon the above reasoning, the court will grant the Commonwealth defendants' motion for partial summary judgment on plaintiff's 1983 malicious prosecution claim and dismiss Count XI with respect to the Commonwealth defendants.  Thus, based upon our rulings on the Commonwealth and casino defendants' motions for summary judgment, remaining in this case are the following claims and parties: Count I, section 1983 excessive force claim against the Commonwealth defendants; Count III, section 1983 assault claim against the Commonwealth defendants; Count V, section 1983 unlawful arrest claim against the Commonwealth defendants; Count VII, section 1983 conspiracy claim against the Commonwealth defendants and Defendant Moody; Count VIII, state law conspiracy claim against Defendant Moody; and Count XIII, vicarious liability claim against Defendant Mount Airy Casino.  An

appropriate order follows.

**Date: <u>March 7, 2017</u>**                     <u>**s/ James M. Munley**</u>
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**